**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NATURE SCHOENDORF,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:08-cv-767-Orl-19DAB**

**TOYOTA OF ORLANDO, a/k/a Central**
**Florida Motor Sales, Inc.,**

        **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration for evidentiary hearing with oral argument on the following motion filed herein:

> **MOTION:** **DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY JUDICIAL PROCEEDINGS (Doc. No. 24)**
>
> **FILED:** **June 9, 2008**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

Plaintiff was employed by Defendant from September 10, 2007 to December 11, 2007. She filed suit against Defendant on May 12, 2008, asserting claims under the Fair Labor Standards Act ("FLSA") for unpaid overtime. Doc. No. 1. On Plaintiff's first day of work, on September 10, 2007, Plaintiff and Defendant's representative – Plaintiff's supervisor, Glen Brewer – purportedly signed a "Toyota of Orlando Arbitration Agreement"[1] (Doc. No. 6-2), which states: "Disputes subject to

---

[1] Referred to herein as "the Arbitration Agreement."

arbitration are all Disputes between the parties which may otherwise be brought in a court or before a governmental agency . . . include . . . claims related to payment of wages and compensation." Doc. No. 6-2 at 1.  Based on this document, Defendant now moves to compel arbitration and stay these proceedings. Doc. No. 24. Plaintiff opposes the Motion, arguing that she never signed the Arbitration Agreement, and the illegible signature on the Agreement is not hers; thus, there was no valid contract. Doc. No. 7.

The Toyota of Orlando Arbitration Agreement states that the Agreement may be enforced under the Federal Arbitration Act, or under state law as applicable to the work location. Doc. No. 6-2 at 1.  Under the Federal Arbitration Act ("FAA"), any written agreement to arbitrate "evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable," "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  In order for a claim to be arbitrable, there must be a valid agreement to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  Plaintiff contends that no valid agreement to arbitrate exists between the parties.

Plaintiff contends that under ordinary contract principles, which determine whether parties are contractually bound in an arbitration agreement, Plaintiff cannot be bound by the Arbitration Agreement in this case because she did not sign it or intend to be bound by it. Doc. No. 7 at 2 (citing *Fleetwood Enter. Inc. v. Gaskamp,* 280 F. 3d. 1069, 1073 (5th Cir. 2002)).  At an evidentiary hearing held on September 16, 2008, Plaintiff testified that she did not sign the Arbitration Agreement, although she did admit to signing at least a dozen other new-hire employment forms.  Plaintiff testified that she filled the paperwork out in the office of Glen Brewer, her former supervisor on her first day of work.  Brewer for the most part corroborated Plaintiff's description of the new hire packet and that he was in charge of her completing the documents and responding to her questions.  The crux

of the dispute is Plaintiff's testimony that she had questions about some of the documents, and because she did not feel well that day[2], she asked if she could complete some of the documents at home, but Brewer collected the papers, told her he would look them over, and "not to worry about it" and it was "no big deal." Plaintiff testified that she was not asked to subsequently sign any papers she had left unsigned; she never received copies of the documents she had signed that day.

Plaintiff testified that Brewer was in the office "on and off" while she was filling out the paperwork and they were interrupted repeatedly. Brewer disputed that anything in the new hire packet of documents was left blank; he testified that his uniform procedure is to review the packet and if there were blank documents, then to make the newly hired employee sign them. In response to the Court's question, Brewer admitted that he was not sitting with Plaintiff the entire time she reviewed the new-hire paperwork and did not actually see Plaintiff sign the arbitration form; he signed the form on behalf of the Defendant only *after* he took the packet back from Plaintiff.

Plaintiff further testified that Brewer had previously asked her out on a date before she came to work at Defendant's location. He told her that she had not received an adequate score on the psychological screening (completed prior to her first day) and then took her into his office and completed her psychological screening questions on the computer himself[3]. Brewer testified that he did not recall how Plaintiff scored on the psychological test, but he admitted asking Plaintiff for a dinner date when she was a customer, prior to her becoming an employee. One implication of these circumstances is that Brewer was anxious, for personal reasons, to get Plaintiff, who had no identifiable qualifications for the job, on the payroll regardless of human resources' requirements.

---

[2]Plaintiff had had minor surgery the Friday before her first day at work and did not wish to miss work on her first day because of the surgery. Brewer testified that he remembered Plaintiff feeling ill the first day.

[3]Another of Defendant's employees, Jennifer Bruce, testified that it was against company policy for an employee to take an exam or sign a paper on behalf of another employee.

The burden of establishing the existence of an agreement to submit this dispute to arbitration is on the Defendant. In the end, the only evidence going directly to this issue is a photocopy of a document with a scrawl where an employee's signature would appear. No witness identified the scrawl as Plaintiff's signature. The best the Defendant could do in this regard is prove that the exhibit was a copy of a piece of paper found in Plaintiff's personnel file; it is not otherwise authenticated. No one saw her sign the document, and she denied, in detail, doing so. The scrawl does not appear particularly similar to the various scrawls Plaintiff uses as her signature. Defendant offered circumstantial evidence to the effect that Plaintiff would not have been placed on the payroll in the absence of her signature on all documents. It appears to be the case that the human resources department would not have approved the packet with a blank form. However, no one involved in precessing the packet actually saw Plaintiff sign this form. The mere existence of an indecipherable entry does not support the inference that it was Plaintiff who put a signature there.

Plaintiff testified that, while she uses different signatures depending on the formality of the setting, the signature on the Arbitration Agreement was not hers because she makes the "S" in her last name in an exaggerated fashion, described as a "crazy eight," which was not done on the Arbitration Agreement. The Court finds that although Plaintiff's signature is quite illegible and ill-defined, the signature at issue on the Arbitration Agreement is missing the "crazy eight" or "S" characteristic that Plaintiff describes.

The failure of Defendant's proof is heightened by its reliance on a photocopy. When asked about the original, Brewer testified that it was at his office building; the original document was not introduced into evidence, only a copy. Such copy was not the best evidence of Plaintiff's signature on the Arbitration Agreement. The best evidence rule is the rule of evidence that requires the contents of an available written document to be proved by introduction of the document itself. *Development*

*Corp. of America v. United Bonding Ins. Co.,* 413 F.2d 823, 825 (11th Cir. 1969); *see also Telecom Technical Services Inc. v. Rolm Co.,* 388 F.3d 820, 830 (11th Cir. 2004) (the best evidence rule applies where the party presenting evidence seeks to prove the specific contents of a writing). Defendant presented no grounds for introduction of the copy, rather than the original, of the Arbitration Agreement. Examination of the original might well have provided significant information (*e.g.,* ink color and pen pressure) pertinent to evaluating the genuineness of the scrawl.

Based on the evidence of the circumstances surrounding the signing of the Arbitration Agreement that were presented at the hearing, the Court finds that Defendant has failed to produce sufficient evidence that the Arbitration Agreement is enforceable. It is respectfully **RECOMMENDED** that Defendant's Renewed Motion to Compel Arbitration (Doc. No. 24) be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 22, 2008.

                                                  *David A. Baker*
                                                  DAVID A. BAKER
                                                  UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy