NATURE SCHOENDORF,

                Plaintiff,

-vs-                                    Case No. 6:08-cv-767-Orl-19DAB

TOYOTA OF ORLANDO, a/k/a Central Florida
Motor Sales, Inc.,

                Defendant.

_____

# ORDER

This case comes before the Court on the following:

1.     Motion to Compel Arbitration and Stay Judicial Proceedings by Defendant Toyota of Orlando, a/k/a Central Florida Motor Sales, Inc. (Doc. No. 6, filed June 9, 2008);

2.     Memorandum in Opposition to Defendant's Motion to Compel Arbitration and Stay Judicial Proceedings by Plaintiff Nature Schoendorf (Doc. No. 7, filed June 17, 2008);

3.     Renewed Motion to Compel Arbitration and Stay Judicial Proceedings by Defendant Toyota of Orlando, a/k/a Central Florida Motor Sales, Inc. (Doc. No. 24, filed Sept. 3, 2008);

4.     Order of the United States Magistrate Judge Denying Motion at Docket Number 6 as Moot and Notice of Hearing on Motion at Docket Number 24 (Doc. No. 25, filed Sept. 5, 2008);

5.     Evidentiary Hearing Before the United States Magistrate Judge on the Motion at Docket Number 24 (Doc. No. 27, filed Sept. 16, 2008);

6.      Exhibit List of Plaintiff Nature Schoendorf (Doc. No. 28, filed Sept. 16, 2008);

7.      Exhibit List of Defendant Toyota of Orlando, a/k/a Central Florida Motor Sales, Inc. (Doc. No. 29, filed Sept. 16, 2008);

8.      Report and Recommendation of the United States Magistrate Judge to Deny the Motion at Docket Number 24 (Doc. No. 30, filed Sept. 22, 2008);

9.      Transcript of the September 16, 2008 Evidentiary Hearing Before the United States Magistrate Judge (Doc. No. 31, filed Sept. 30, 2008);

10.      Objection to the Magistrate Judge's Report and Recommendation by Defendant Toyota of Orlando, a/k/a Central Florida Motor Sales, Inc. (Doc. No. 33, filed Oct. 2, 2008);

11.      Notice of Filing Original Arbitration Agreement by Defendant Toyota of Orlando, a/k/a Central Florida Motor Sales, Inc. (Doc. No. 34, filed Oct. 2, 2008); and

12.      Memorandum in Opposition to Defendant's Objections to the Magistrate Judge's Report and Recommendation by Plaintiff Nature Schoendorf (Doc. No. 35, filed Oct. 9, 2008).

## Background

Plaintiff Nature Schoendorf, individually and on behalf of all others similarly situated, brought this action against Defendant Toyota of Orlando, a/k/a Central Florida Motor Sales, Inc. (Doc. No. 1, filed May 12, 2008.) She alleged that Defendant failed to pay her proper overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (2006). (Doc. No. 1 at 7-8.) In response, Defendant filed a Motion to Compel Arbitration and Stay Judicial Proceedings. (Doc. No. 6.) Defendant claimed that Plaintiff signed an agreement requiring the

parties to resolve all disputes between them through arbitration, and Defendant attached a copy of this agreement purportedly signed by Plaintiff. (*Id.* at 2 ¶ 3; Doc. No. 6-2.) Plaintiff filed an Opposition to Defendant's Motion in which she argued that she did not agree to arbitration or sign the arbitration agreement. (Doc. No. 7 at 3-4, 7-11.)

The Court scheduled an evidentiary hearing on the Motion to Compel Arbitration which was cancelled due to inclement weather conditions. (Doc. No. 20, filed Aug. 6, 2008; Doc. No. 23, filed Aug. 18, 2008.) The hearing was rescheduled before the United States Magistrate Judge. (Doc. No. 25.) After the hearing, the Magistrate issued a Report recommending that the Motion to Compel Arbitration be denied. (Doc. No. 30.) The Magistrate concluded that Defendant had failed to prove a valid arbitration agreement existed between the parties. (*Id.* at 5.)

Defendant filed an Objection to the Report and Recommendation of the Magistrate, arguing that the Magistrate erred in finding that there was no valid arbitration agreement. (Doc. No. 33.) First, Defendant contends that the evidence shows that Plaintiff did in fact sign the contested document. (*Id.* at 2-4.) In the alternative, Defendant argues that Plaintiff's acceptance of the agreement may be inferred from her admission that she received the arbitration agreement and subsequently began working for Defendant with the knowledge that the agreement was a condition of employment. (*Id.* at 5-7.)

In response, Plaintiff reiterates that she did not sign the arbitration agreement and states, "Defendant provided no evidence, of handwriting analysis or otherwise, to link the scribble in question to Plaintiff's signature." (Doc. No. 35 at 3.) In contrast, Plaintiff presented evidence about the characteristics of her signature that were not present in the arbitration agreement signature, and both she and her sister testified that the scrawl on the agreement was not Plaintiff's signature. (*Id.*

at 3-5.) Rather, Plaintiff asserts that the evidence suggests that her former supervisor, Glenn Brewer, forged Plaintiff's signature on the agreement. (*Id.* at 7-10.) Moreover, Plaintiff argues that Defendant has failed to produce any evidence of her intent to be bound by the arbitration agreement. (*Id.* at 11-15.) Therefore, states Plaintiff, the arbitration agreement is invalid, and arbitration should not be compelled. (*Id.* at 15.)

## Standard of Review

If a party wishes to challenge the report and recommendation of a magistrate judge, the party must "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* 28 U.S.C. § 636(b)(1) (2006). As explained by the Eleventh Circuit Court of Appeals, the party's objections must "specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)). "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "It is critical that the objection be sufficiently specific and not a general objection to the report." *Macort*, 208 F. App'x at 784 (citing *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984)). If a party has made a proper objection, the district court's *de novo* review "does not mean that [the court] must make a *de novo* examination of the witnesses. Rather, that review is a *de novo* review of the record." *United States v. Farias-Gonzalez*, 556 F.3d 1181, 1184 n.4 (11th Cir. 2009) (citations omitted). After concluding its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1); Local Rule 6.02.

**Analysis**

## I.    Arguments of the Parties

The determinative issue raised by the relevant filings of the parties is whether they have a valid agreement to arbitrate the current dispute.  If so, the case must be stayed and arbitration compelled.  If not, the action proceeds before this Court.  The parties disagree whether Plaintiff in fact signed Defendant's standard arbitration agreement.  To support its claim, Defendant has provided a document which Defendant contends is the arbitration agreement signed by Plaintiff.  In response, Plaintiff denies that the scribble on the document is her signature.

The quality of Plaintiff's signature varies widely, as demonstrated by the composite below of signatures submitted during the evidentiary hearing before the Magistrate.  (Doc. Nos. 28-29.)  In this composite image, the second-to-last signature in the bottom, right-hand corner is the one contested by Plaintiff (with "Individual" typed above); she admits that the rest are her signatures.



## II.    General Principles of Law

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2006), provides the substantive law controlling the validity and enforcement of covered arbitration agreements. "The FAA embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and quotation marks omitted). As provided by the Act, when a party moves a court to compel arbitration pursuant to an arbitration agreement:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue. . . .

*Id.* § 4. Through this provision, Congress expressly assigned the duty of deciding issues concerning the "making of the arbitration agreement" to the courts. *Id.*

The United States Supreme Court, in analyzing the role of the courts in enforcing arbitration agreements under the FAA, noted that "[a]rbitration under the Act is a matter of consent, not coercion . . . ." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). The Court has further explained that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (emphasis and alterations in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649

(1986)).  Thus, a court should decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all . . . ."  *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *accord Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 853-56 (11th Cir. 1992).

When determining whether a valid arbitration agreement exists, a court should consider both federal policy and applicable state contract law.  As the Eleventh Circuit has explained:

> The FAA preempts state law to the extent it treats arbitration agreements differently than other contracts.  The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts.  However, state law generally governs whether an enforceable contract or agreement to arbitrate exists.  Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts.  The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.

*Caley*, 428 F.3d at 1367-68 (citations and quotation marks omitted); *see also Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) ("Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements.").

Taking into account the general federal policy favoring arbitration, the Eleventh Circuit has found that when a party denies the existence of a valid arbitration agreement, "that party must substantiate the denial of the contract with enough evidence to make the denial colorable." *Chastain*, 957 F.2d at 855.  "A party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists." *Id.*  Rather, the Eleventh Circuit held, "To make a genuine issue entitling the party seeking to avoid arbitration to a trial by jury on the arbitrability question, an unequivocal denial that the agreement had been made is needed, and some evidence should be produced to substantiate the denial." *Id.* at 854 (alterations omitted) (quoting *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980)).

## III.    Merits of the Arguments of the Parties

### A.    Plaintiff's Threshold Burden to Raise a Genuine Issue

To raise a genuine issue concerning the validity of the arbitration agreement, Plaintiff must: (1) make an unequivocal denial that there was an agreement, and (2) produce evidence to substantiate the denial.  *Id.*  To meet this threshold burden, Plaintiff has attached a signed and sworn affidavit to her Memorandum in Opposition to Defendant's Motion to Compel Arbitration and Stay Judicial Proceedings.  (Doc. No. 7 at 7-8.)  In this affidavit, Plaintiff states in relevant part:

> 3.    I have no recollection of ever seeing this "Arbitration Agreement" prior to this lawsuit.
>
> 4.    I have no recollection of ever signing this "Arbitration Agreement."
>
> 5.    My name appears nowhere on this "Arbitration Agreement."
>
> 6.    My signature does not exist anywhere on this "Arbitration Agreement."
>
> 7.    The scribbled marking on the last page of this "Arbitration Agreement" and below the word "Individual" is not my signature.

(*Id.*)

During the evidentiary hearing before the Magistrate, Plaintiff somewhat qualified her statement that she did not recall seeing the arbitration agreement before in response to questions from defense counsel:

> Q.    All right.  I'm handing you what I've written down as Defense Exhibit L.  Do you recognize that document?
>
> A.    Yes.
>
> Q.    What is that document?
>
> A.    It's the arbitration that I've seen –
>
> Q.    Is that your signature at the bottom of the agreement on page four?

A.    It says page three.

Q.    I'm sorry, page three?

A.    No.

Q.    What about the date, is that your handwriting?

A.    Yes.

Q.    So, it's your testimony that that is not your signature at the bottom of this arbitration agreement?

A.    Correct.

Q.    But you agree that the date on the arbitration agreement is your handwriting, correct?

A.    Can you restate?

Q.    I'm sorry. The date that's written on the agreement, that is your handwriting?

A.    The date, yes.

(Doc. No. 31 at 18-19.)  The Magistrate asked some additional questions of Plaintiff to clarify why she would date a document and not sign it:

Q.    On Exhibit L, the arbitration agreement that you say is not your signature, how did it come to have your handwriting on the date, but not your signature?

A.    I'm trying to find it, I'm sorry.  Here's L, Exhibit L. And you asked how–sometimes for me, and I did it the other day when I was getting an MRI, and there was [sic] questions, I like to get things filled out as much as possible.  And if I have a question later, then I can answer it, but I don't usually sign anything unless I have all the answers, then I'll sign.

Just like when I got the MRI, the lady said, "You didn't sign this."  I said, "I don't know what a contrast fluid is.  Is it a dye?"  And she says, "Well, we can't put the contrast in for you for the MRI."  The same thing, I don't sign off until I understand exactly everything, so that's why I don't think I signed this.  I don't believe that's my signature.  I put an S with everything, S with

everything. And everything I have has an S in it. And I remember I didn't
understand everything about this, and I don't even remember all of it. . . .

(*Id.* at 26-27.)

Upon further questioning by her attorney, Plaintiff testified that she did not know what an
arbitration agreement was at the time she was hired by Defendant and reiterated that she did not sign
any arbitration agreement:

Q.   Okay. In September of 2007, did you know what arbitration was?

A.   No, ma'am.

Q.   In September 2007, had you ever heard of the Federal Arbitration Act?

A.   No.

Q.   In September 2007, would you have even known what an arbitration
     agreement was?

A.   No, ma'am.

Q.   Prior to 2007, did you have any experience working in the legal field?

A.   No, ma'am.

* * *

Q.   Okay. Do you recognize the [arbitration] agreement? Well –

A.   I recognize it.

Q.   And is your name anywhere on that agreement?

A.   No, ma'am.

Q.   Is your signature anywhere on that document?

A.   No, ma'am.

Q.   On the third page of that document, there is a scribbled line, a scribble. Can
     you look at that for me and tell me is that your signature?

A.      No, ma'am, that's not my signature.

Q.      Are you absolutely sure?

A.      I'm sure. It doesn't have a crazy S on it.

(*Id.* at 64-66.) In addition, Plaintiff's sister confirmed that the signature on the arbitration agreement was not Plaintiff's signature. (*Id.* at 77-78.)

Based on this evidence, Plaintiff has met her threshold burden to raise a genuine issue that there was no valid agreement to arbitrate. She has stated unequivocally that she did not sign the agreement, and she has provided evidentiary support for her claim. Therefore, the Court must consider the merits of Plaintiff's argument that there is no valid agreement to arbitrate.[1]

### B.      Existence of a Valid Arbitration Agreement Under Florida Law

As previously stated, the validity of an arbitration agreement is a matter of state law. *Caley*, 428 F.3d at 1367-68; *Employers Ins. of Wausau*, 251 F.3d at 1322. The present case involves an employment relationship in Florida and documents purportedly signed in Florida. As both parties appear to recognize, Florida law controls the contractual question; that is, whether there exists a valid arbitration agreement between the parties. (*See* Doc. No. 33 at 5; Doc. No. 35 at 11-12.)

To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove "offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) (describing the "basic requirements of contract law"). The proponent of the contract must prove these elements by a preponderance of the evidence. *Id.* (oral contract); *see also Robbie v. City of Miami, Fla.*, 469 So. 2d 1384, 1385 (Fla.

---

[1] Because neither party has demanded a jury trial on the arbitration issue, the Court may resolve the matter. 9 U.S.C. § 4.

1985) (written contract).  When one party is seeking to enforce a challenged agreement to arbitrate, "the [party] who should lose on the issue of an agreement to arbitrate is the one who failed to carry its burden of proving an acceptance of arbitration as a contractual remedy."  *Steve Owren, Inc. v. Connolly*, 877 So. 2d 918, 920 (Fla. 4th DCA 2004) (citing *Shearson, Lehman, Hutton, Inc. v. Lifshutz*, 595 So. 2d 996, 997 (Fla. 4th DCA 1992)).

As evidence of Plaintiff's acceptance of the agreement to arbitrate, Defendant offers a document which purports to be the agreement signed by Plaintiff.  (Doc. No. 34-2.)  The document states that it is an agreement "between the undersigned Individual and TOYOTA OF ORLANDO." (*Id.* at 1.)  There is a scribble on the third page of the document underneath the space marked for "Individual."  (*Id.* at 3.)  The scribble is indecipherable, and the name of the "Individual" is not printed on the form.  (*See id.*)  Defendant argues that the Court should conclude that Plaintiff signed this document because: (1) the agreement was part of Plaintiff's new hire package, and she admits to signing other documents that were in the package; (2) Plaintiff admits that the date on the agreement is in her handwriting; (3) the signature on the agreement is similar to those that Plaintiff admits are hers, and Plaintiff testified that her signature varies; (4) Plaintiff impeached herself by stating in her affidavit that she had not seen the agreement before the instant litigation began; (5) her former supervisor, Glenn Brewer, testified that there was a signature on the agreement when he reviewed Plaintiff's new hire package; and (6) Jennifer Bruce of Defendant's human resources payroll department testified that she processed Plaintiff's new hire package and observed that everything was signed and completed.  (*E.g.*, Doc. No. 31 at 5, 80; Doc. No. 33 at 2-4.)

After reviewing the submissions of the parties and the transcript of the evidentiary hearing before the Magistrate *de novo*, the Court makes the following findings.  A comparison of the

signatures offered by the parties is inconclusive as to whether the signature on the arbitration agreement is the signature of Plaintiff.  (*See* Composite Image, Section I, *supra*.)  Because Defendant bears the burden to prove the existence of the agreement, the Court must look to the other evidence produced by Defendant to determine if this burden has been met.[2]  The testimony and exhibits offered by Defendant, however, reveal no definitive evidence that the scribble on the arbitration agreement is Plaintiff's signature.  (*See* Doc. Nos. 29, 31.)  There has been no testimony from a handwriting expert to identify the scribble as Plaintiff's signature, and none of Defendant's witnesses actually saw Plaintiff sign the arbitration agreement.  (Doc. No. 31 at 35-36, 49, 56-57.)  In contrast, both Plaintiff and her sister testified that the scrawl was not Plaintiff's signature.  (*Id.* at 18-19, 65-66, 77-78.)  The Magistrate, who observed the witnesses as they testified, found Plaintiff's testimony to be credible.[3]  This Court finds that the transcript of the hearing supports this conclusion and adopts the credibility determinations of the Magistrate.  *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1245 (11th Cir. 2007) (explaining that the district court may "adopt the credibility findings made by a magistrate judge without conducting a new hearing before making a final determination") (citing *United States v. Raddatz*, 447 U.S. 667 (1979)).  The Court also agrees with the Magistrate that the evidence offered by Defendant is purely circumstantial and is

---

[2] Defendant received notice of the evidentiary hearing on the Motion to Compel Arbitration. (Doc. No. 25.)  The Notice of Hearing stated, "The parties should be prepared to present evidence of any matters material to the motion for arbitration that are genuinely dispute[d]."  (*Id.* at 1.)

[3] Defendant argues that Plaintiff impeached herself during the evidentiary hearing by contradicting her earlier sworn statement.  (Doc. No. 33 at 1, 4.)  Plaintiff stated in the earlier affidavit that she did not recall seeing the arbitration agreement before this lawsuit.  (Doc. No. 7 at 7.)  At the later evidentiary hearing, Plaintiff testified that the date on the arbitration agreement was in her handwriting.  (Doc. No. 31 at 18-19.)  The Court rejects Defendant's impeachment argument and instead finds that the later testimony corrects and clarifies Plaintiff's earlier statement.  This clarification does not discredit the testimony of Plaintiff.

insufficient to outweigh Plaintiff's direct testimony that she did not sign the arbitration agreement.

In the alternative, Defendant argues that "the fact that the plaintiff continued to work for the defendant after she admittedly received the Agreement evidences the consideration and acceptance of the terms of the arbitration agreement." (Doc. No. 33 at 7.) The authority that Defendant offers to support its argument, however, is distinguishable from the instant action.

First, Defendant cites *Santos v. General Dynamics Aviation Services Corp.*, 984 So. 2d 658 (Fla. 4th DCA 2008), a case in which an employer provided notice of a new arbitration policy to all of its employees. *Id.* at 659. This notice stated that "the continuation of employment by an individual shall be deemed to be acceptance of the [arbitration agreement]. No signature shall be required for the [arbitration agreement] to be applicable." *Id.* Because the arbitration policy expressly provided that the continuation of employment would constitute acceptance of the policy, the *Santos* court found that the employee seeking to avoid arbitration had accepted the agreement by continuing his employment. *Id.* at 661.

The fact found determinative in *Santos*, the acceptance of the agreement through continued employment, is not present in the instant case. Defendant's arbitration agreement concluded with the following language in bold print:

Both parties acknowledge that they:

- have carefully read this Agreement,
- were provided an opportunity to examine the Arbitration Rules,
- have had an opportunity to consult legal counsel before signing, and
- understand that by signing this Arbitration Agreement, both parties waive their right to trial by court or jury.

(Doc. No. 34-2 at 3.) The document then provided a space for signatures. (*Id.*) In this way, the arbitration agreement defined the appropriate method of acceptance as the *signatures* of the parties.

Because Defendant's arbitration agreement did not state that acceptance was made through continued employment, the instant case is distinguishable from *Santos*.

Defendant also cites *H.W. Gay Enterprises, Inc. v. John Hall Electrical Contracting, Inc.*, 792 So. 2d 580 (Fla. 4th DCA 2001). In *H.W. Gay Enterprises, Inc.*, a contractor, John Hall Electrical Contracting, Inc. ("John Hall Electrical"), submitted a winning bid for a project run by a construction company, H.W. Gay Enterprises, Inc. ("H.W. Gay"). *Id.* at 580. The president of H.W. Gay provided the president of John Hall Electrical with a contract which contained an arbitration provision. *Id.* at 580-81. John Hall Electrical's president signed the contract and returned it to H.W. Gay's president. *Id.* H.W. Gay's president filled in the blanks of the contract but never signed it. *Id.* Nevertheless, the parties began working together and "did their best to comply with the terms of the agreement." *Id.* at 581. For example, H.W. Gay paid John Hall Electrical in accordance with the contract. *Id.* Because the parties manifested acceptance of the contract through their conduct, the court concluded that the course of dealing between the parties demonstrated that they agreed to be bound by the written but unsigned contract. *Id.* The arbitration clause was a provision of this contract; therefore, it was binding on the parties. *Id.*

The instant matter is distinguishable because in *H.W. Gay Enterprises, Inc.* the arbitration provision was part of the contractual writing to which the parties manifested their assent. In contrast, in the present action the arbitration agreement is a distinct document which, by its own terms, is "not a contract of employment." (Doc. No. 34-2 at 1.) This language demonstrates that the arbitration agreement is independent of the employment agreement between the parties, and the Court cannot infer acceptance of the arbitration agreement from Plaintiff's acceptance of

employment with Defendant. The record does not otherwise reveal evidence of words or conduct by the Plaintiff from which assent to the terms of the arbitration agreement may be derived.

Next, Defendant cites *Cintas Corporation No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005), for the proposition that "the promise of continued employment was sufficient consideration to support an arbitration agreement." (Doc. No. 33 at 6.) This point is inapposite to the present issue, however, which concerns whether there was acceptance of the arbitration agreement and not whether there was adequate consideration.

The Eleventh Circuit case cited by Defendant, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005), holds that the FAA does not require that the parties sign an arbitration agreement for it to be enforceable. *Id.* at 1369. The question of whether the agreement is enforceable under state law, however, is a separate issue. In *Caley*, the court considered this question under Georgia law. *Id.* at 1373-79. Therefore, the *Caley* case does not provide authority for enforcement of an unsigned contract under Florida law. Moreover, the facts in *Caley* are similar to the facts in *Santos* in that the employer promulgated a new arbitration policy that "clearly announced" that "acceptance of employment or the continuation of employment by an individual shall be deemed to be acceptance," "no signature would be required for the policy to be applicable," and "the policy would be a condition of continued employment." *Id.* at 1374-75. Accordingly, pursuant to the express terms of the policy, the Eleventh Circuit concluded that the employee's act of continued employment constituted acceptance of the policy. *Id.* at 1375. In this way, *Caley* is factually distinguishable from the instant case in the same way that *Santos* is distinguishable: the determinative fact in both *Caley* and *Santos*, that acceptance was specified in the policy as continued employment, is not present in Defendant's arbitration agreement. The remaining cases cited by

Defendant are from jurisdictions outside of Florida and the Eleventh Circuit, involve the laws of other states, and therefore are not controlling as to Florida contract law.

The Court's own research reveals two factually analogous Florida state law cases. First, in *Shearson, Lehman, Hutton, Inc. v. Lifshutz*, 595 So. 2d 996 (Fla. 4th DCA 1992), Florida's Fourth District Court of Appeal reviewed a case in which the trial court denied the appellants' motion to compel arbitration. *Id.* at 997. The court explained, "Although the appellants produced their standard brokerage contract with its standard arbitration clause at the hearing on their motion to compel arbitration, the appellees denied that they signed or assented in any way to the agreement or the arbitration clause." *Id.* Furthermore, "No handwriting experts were called, nor was there any other attempt to authenticate the illegible scratches on the signature lines of the brokerage agreement submitted by the appellants." *Id.* The court affirmed the decision of the trial court, finding that appellants failed to meet their burden to demonstrate a valid arbitration agreement between the parties. *Id.*

Similarly, in *Steve Owren, Inc. v. Connolly*, 877 So. 2d 918 (Fla. 4th DCA 2004), an agent denied signing her former broker's employment agreement which contained an arbitration provision, and the agent "was emphatic that she never agreed to arbitration." *Id.* at 919. In response, "[t]he broker['] s contrary evidence was basically habit and practice." *Id.* Specifically, as recited by the court:

> No witness testified that the agent actually signed the document in his/her presence. No one remembered positively seeing the document with her signature on it. Rather the [employer's] evidence was all about how it requires every agent to sign such agreements, and that a signed agreement simply must have been in her file at some time even though none was found and produced at the hearing. The [employer] showed that it is necessary for all agents to sign a particular form, other than the document with the arbitration provision, which is required by the governmental agency regulating brokers and agents. Again this was habit and practice evidence,

> rather than a positive and absolute contradiction of the agent[']s testimony. Essentially the [employer's] position was that it was unthinkable that she did not sign the agreement, even if it could not produce one.

*Id.* at 919-20. Based on this evidence, the appellate court affirmed the decision of the trial court that the agent was "the most credible and knowledgeable about the fact that no independent contractor agreement was ever signed." *Id.* at 920.

The appellate court next considered the broker's alternative argument "that in spite of refusing to agree to arbitration, the agent must be deemed bound by its terms because she accepted the benefits of employment with the broker for that period of time." *Id.* The court explained the broker's reasoning as follows: "The idea is that the defending party to the contract should get the benefit of a provision expressly rejected by the complaining party because she had the benefit of the defending party's performance of other terms of employment, namely the payment of a share of commissions earned by the agency." *Id.* Upon consideration, the *Steve Owren, Inc.* court rejected the broker's argument, *id.*, which is almost identical to the alternative argument raised by Defendant in the instant case. In declining to find the agent bound by the unsigned arbitration agreement, the court emphasized that the broker bore the burden of proving a valid agreement to arbitration, and "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." *Id.* (citations omitted).

In the present action, the Court will follow the factually similar and well-reasoned decisions of Florida's Fourth District Court of Appeal in *Shearson, Lehman, Hutton, Inc.* and *Steve Owren, Inc.* As in those cases, there is only circumstantial evidence to suggest that Plaintiff signed the contested arbitration agreement, no one actually witnessed Plaintiff sign the agreement, and Plaintiff directly denies signing it. Like in *Steve Owren, Inc.*, Plaintiff accepted employment with Defendant

but did not manifest acceptance of the arbitration agreement, and the agreement did not provide for acceptance through continued employment. Because Plaintiff raised a genuine issue as to the validity of the arbitration agreement, Defendant bore the burden to prove its validity by a preponderance of the evidence. Upon reviewing the record *de novo*, the Court agrees with the Magistrate that Defendant has failed to meet its burden.

## Conclusion

Based on the foregoing, the Objection to the Magistrate Judge's Report and Recommendation by Defendant Toyota of Orlando, a/k/a Central Florida Motor Sales, Inc. (Doc. No. 33, filed Oct. 2, 2008) is **OVERRULED**, the Report and Recommendation of the United States Magistrate Judge to Deny the Motion at Docket Number 24 (Doc. No. 30, filed Sept. 22, 2008) is **AFFIRMED** and **ADOPTED**, and the Renewed Motion to Compel Arbitration and Stay Judicial Proceedings by Defendant Toyota of Orlando, a/k/a Central Florida Motor Sales, Inc. (Doc. No. 24, filed Sept. 3, 2008) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on April 21, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:
Counsel of Record